Vineland Fireworks Company, Inc. v. Bureauof Alcohol, Tobacco, and Firearms Mr. Foster Good morning, may it please, actually it's good afternoon, may it please the Court. My name is Don Foster. I represent the petitioner, Vineland Fireworks Company, Inc. At the outset, I would like to reserve three minutes for rebuttal, if I could. That request will be granted. This is an appeal of a decision by the acting director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives to reverse the decision of an administrative law judge recommending that Vineland's fireworks license not be revoked. Unless the Court wishes that I direct my comments elsewhere, I propose to spend my initial comments, or the time available to me, initially discussing the standard of the director's review of the ALJ decision and then how that standard of review, whether or not actually applied, affects application of this Court's standard of review of the director's decision. I then propose to turn to the areas in which the director, in Vineland's estimation, mischaracterized the opinion of the administrative law judge, particularly insofar as the issue of willfulness is concerned. I will do that to support the proposition that is repeated throughout the ALJ decision, as well as in Vineland's briefs to this Court, that this is an agency that acted arbitrarily and whose decisions are unsupported by any reasonable, objective evaluation of the non-distorted evidence in this case. Turning first to the issue of the director's standard of review, the only factual issue in this case is whether or not Vineland, the citations for which Vineland was cited in the fall of 2004, were willfully committed or omitted. That was something that was established on the trial record through agreement by the ALJ and counsel. That is the standard that must be met by the ATF before it can immediately revoke a license. Well, you were going to talk about the director's standard, right, in reviewing the ALJ's decision? And I'm getting that, and I'm setting a little bit of a factual predicate of the ALJ's decision, the basis for it, and then I'm going to move directly into the director's standard of review of that decision. But I do want to put that review in context. The issue of willfulness was tried three days before the ALJ. He heard evidence, testimony from ATF witnesses, from Vineland witnesses. He received documentary evidence by both parties. He found in an exhaustive 62-page opinion that not only was there no willfulness, but he did so in terms that would cause any reviewing authority to look long and hard at the record before disagreeing with him. And if your honors have read the opinion, he used phrases such as the conduct was not willful by any stretch. The notion of willfulness cannot be taken seriously. Violations were decidedly not willful. Right. We did read the record. So can you speak about 27 CFR 555.79? I will do that, your honor. And that specific regulation limits the director's authority to reverse an ALJ decision in situations where it was arbitrary, it was without reasonable warrant in fact, or it was contrary to law and regulation. I submit, and we have argued this throughout our briefs, that that is a deferential standard of review. Right. I take your – well, I'm not sure whether your opponents are arguing this or not, so I'll ask them later. But one might read that regulation to say what the petitioner has to put in their filing, but not necessarily what controls the director's review. Since it's couched in terms of the appeal to the director, the petition will set forth, et cetera. Do you have law in some case where 555.79 has been read as you're asserting it should be read as dictating the standard of review itself and not the contents of the petition? Yes, but not reported decisions of a court. What I have done, and I've cited this in the reply brief, I've cited decisions by the ATF director, specifically the In re Luna Tech case and the Austin Fireworks case. But I think you don't – you need not go any further than the director's decision in this very case, where at the outset on page 10 of his opinion, he says that on appeal from the recommended decision of an ALJ, the director's standard of review is whether the recommended decision was arbitrary in nature, without reasonable warrant in fact, or contrary to law and regulations. So that I would suggest in response to your Honor's question that the practice, the longstanding accepted practice within the ATF itself has been that the director's review is limited by that section and that by analogy, as we've argued also in our briefs to similar regulations with other administrative agencies, that that is a deferential standard of review. Now, as I said, the director acknowledged that standard at the outset of his opinion, but then proceeded to ignore it, which the government actually has admitted at the final parts of its brief, pages 48 through 51, in which the government argues in favor of a completely unfettered de novo review of the ALJ record. I submit that a comparison of the two opinions, and those two opinions to the record in this case, indicates that the director ignored all of the evidence cited by the ALJ, particularly the conclusions that relied on credibility findings. And I think that, again, if you've read the opinion, the administrative law judge was very pointed in some of its conclusions regarding the credibility of the witnesses on behalf of the two sides, and that, as a result, the conclusion is inescapable. That, in fact, what the director did was ignore this deferential standard of review. Now, I've wracked my... Let me ask you, if you would, to respond to their specific argument about 27 CFR 71.116, dealing with... It's talking about the administrator and says, the administrator may alter or modify any finding of the administrative law judge, but shall not consider evidence which is not part of the record. And that argument from them, I take it, is this is a very broad review, not a limited and deferential. What's your response to that? I think that the two sections have to be read together. First, I think that one clause that identifies the scope of the director's review of the record as being limited to the record before the ALJ is very telling. But what that is saying is what he can do once he has applied the standard of review and has made whatever conclusions that he has made, so that, therefore, if, in fact, after applying a deferential standard of review and the director determines that there is no substantial evidence to support the administrative law judge's conclusions, and as a result thereof the ALJ acted arbitrarily, at that point the director is free to do whatever he wishes. I think that's the only way that you can read the two sections together. If there's a deferential review by the director, why is the ALJ's decision called a recommendation? Why isn't it called a decision? Well, if you look at the Administrative Procedures Act, whenever there is an initial decision, and that's how the APA actually refers to it, as an initial decision either by the administrative law judge or by some other designated administrative officer to hear testimony. By definition, he could have called this an initial decision under the APA. At that point, if the government decides not to appeal the decision, it becomes the decision of the agency. So I think that under the procedures set forth in the Act, that was the title or the label that needs to be given to the decision. You then go to the regulations of the particular agency, and quite frankly, as we've alluded to in our memoranda, there's quite a difference from agency to agency. In the difference of the review, that the agency will apply to the decision of an administrative law judge. Some regulations provide completely unfettered de novo review. Others restrict it to a deferential scope of review such as this. Others are hybrid. So again, to provide consistency to what these decisions are called, they are initial decisions that can morph into a final decision of the agency. Now, assuming that the court agrees that the director did, in fact, not apply the appropriate scope of review, I submit that the remedy is that the court must reverse the director. Now, what the court does with that reversal is something that I'm going to come back to once I discuss some of the... It might just be semantics, but why wouldn't we vacate as opposed to reversing? Reversing seems to imply that your client wins outright. If we agreed with you that the wrong standard of review was applied, why wouldn't we vacate and tell the director, apply the right standard of review? Well, the short answer is you go to the standard of review of this court's decision of an agency that has reversed the finding of either an ALJ or a hearing officer. And under the universal camera line of cases, and as accepted in this circuit by the Albritton case in Eastern Engineering, the court may find if an agency has disregarded the factual findings of an administrative law judge, as a result, therefore, the agency's findings are not supported by substantial evidence and are agreed to reverse. And I'm getting to the answer to the question. In order to get to that point, the case law is clear that this court goes behind the opinions of the administrative law judge and the agency, whether acting through an individual or through a board. And I have a case I want to discuss with the court with regard to that procedure. You go behind that and take a look at the evidence upon which the ALJs relied to reach the conclusion that he did. I believe that that process allows this court, empowers this court, not simply to vacate and remand, but to enter an order reversing the director, reinstating the ALJ's opinion as the opinion or decision of the agency, which therefore, in effect, means that my client wins. Mr. Foster, your time is up, but I'm going to give you an additional five minutes. Thank you. With regard to the scope of review, I think it's important to appreciate the fact that in a situation such as this, where an agency has reversed the findings of an administrative law judge, the review by this court of that agency decision is particularly stringent. It is not the standard substantial evidence review that you might ordinarily engage in if you were reviewing the decision of, say, a district court. It is particularly stringent, and that is in a situation even when … Where does that standard come from? Well, it comes out of the universal camera cases and Albritton. There's a case we've cited in our brief, which deals with an appeal from a decision of the National Labor Relations Board, the Slusher case, and the interesting thing about that case is that the review of the board under NLRB regulations is not deferential. So, even in a non-deferential setting, this court's review is stringent. Now, out of the Tenth Circuit has come a case authored by Judge Aldiserra of this court, which held that in a situation such as this, when the agency action is through an individual, rather than a board or a commission, that that strict scrutiny should even be more exacting. And I refer specifically to the Allet case cited in our reply brief. It appears at 54F3rd. The citation in the brief is to page 1568. The proper citation is to page 1570. On which issue do you want us to apply this stringent standard to? The issue of willfulness? I think that's really the only factual issue in this case. That's the issue here. And neither party has cited it. Is there any Chevron deference in this case? I do not believe that there is any deference, because we're not dealing with a technical issue of interpretation of a statute. We're not dealing with anything other than factual fighting of a state of mind. But aren't we really dealing with the technical interpretation of what was meant by willfulness under the statute that wasn't defined? If you read the case law, willfulness is not dealt with, discussed by the case law in technical terms. The Babcock and Wilcox case of this court talks about pernicious pattern of behavior showing a resolute, a pernicious refusal to abide by the law. If you go to all the cases cited by the government, the Willingham case, the Lewin cases, all the cases that talk about willfulness do so in the context of the dictionary meaning of the word, not any technical specialized meaning that is unique to the ATF. It has to do with the state of mind of the individual when doing or not doing an act that is a particularly factual determination, which I believe and I submit is the particular province of the hearing examiner who is able to witness and observe the demeanor of the witnesses during the course of the trial. Not entirely different or distinguishable from some of the discussion I heard earlier today with regard to sentencing of an individual at a sentencing hearing and the ability of the fact finder to gauge the credibility of the witnesses. Thank you. Thank you, Mr. Foster. We'll have you back for rebuttal. And Ms. Cochran. May it please the Court. My name is Kelsey Brown-Cochran. I'm here on behalf of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Because so many of the petitioner's arguments turn on the level of deference afforded to the director in this case, I thought I would start there as well. In particular, I want to address the petitioner's heavy reliance in the reply brief on Skidmore as a basis for limited deference to the director's legal interpretations in this case. The director's order here involves three kinds of interpretation. First is the agency's interpretation of its own regulations. Second is the agency's interpretation of the applicable statutory provisions. And the third is the director's interpretation of the ALJ's decision here. And the bulk of this case has to do with the first category, which is regulatory interpretation. And it is a basic point of administrative law. That's the bulk of this? Well, I'm sorry. In the course of your addressing that, please be precise in answering your opponent's position that this was a dispute between the ALJ and the director about a peculiarly factual issue, the state of mind of the owners of the Vineland. You mean with regard to the wilfulness? The word wilfulness is both in the statute and it's also in the regulation. So in that sense, it's a bit of a hybrid. When I said the bulk of the interpretation here is regulatory, I was referring to count one. There's an issue of how to interpret the regulations. The standard of review issue raised by 115-116 also is a regulatory issue, how we interpret the delegation of the fact-finding to the ALJ. So in that sense, I think most of this case has to do with regulatory interpretation. And just a brief point to make there that there is no authority whatsoever for the proposition that any sort of limited deference applies to an agency's interpretation of its own regulations. And then moving on to the statutory provisions, again, the reply brief raises the issue of Skidmore. And you just asked about Chevron. And we did not cite Chevron in our red brief primarily because it didn't occur to us that they were arguing for anything less than Chevron deference here. Now you wish you did, right? In hindsight, I certainly would put a cite into Chevron here. But there are two circumstances in which an agency might get limited deference to its interpretation of applicable statutes. One would be whereas in Skidmore itself, the agency does not have primary interpretive responsibility for the statutory language at issue. And the second would be, as in the case of the Meade case that the Supreme Court cited a few years back, where the interpretation is not put forth in a way that carries the force of law. It's indisputable that neither of those circumstances is present here. ATF has general rulemaking authority with regard to the statute here, the statute that puts forth the willfulness standard. And it's also the case that the interpretations are put forth in a formal order following a formal adjudication. But are those things, are they in dispute? Is there any argument in this case that the ATF interpretation of its own statutes was erroneous? Or is this dispute all about whether the owners of Vineland, when they committed recordkeeping and storage violations, did so with a particular state of mind? Well, willfulness, the Supreme Court held in the Safeco case just last year that willfulness is an objective standard. It's an objective standard that has a different meaning in different contexts, which is why the important context here is the explosives and firearms regulations and statutes. But to the extent that that gets to the credibility issue, the director accepted all of the testimony of Ms. Passito and Ms. Fern, who are the two primary witnesses on behalf of Vineland, accepted the truth of the factual statements they made, that they did not know about the deteriorated shot stars that were in the first count, those sorts of things. Now, to the extent that they testified that they were not, in fact, acting willfully, they were testifying to a legal conclusion that is within the purview of the director. So it's true that he did not accept that legal conclusion, but the facts here are pretty much undisputed. Okay. So if the facts are undisputed, and the facts are as the ALJ laid out, which is that you could, well, let me try to ask the question this way. As I read and understood the competing decisions here, it appeared to me that the ALJ was saying they had, they, Vineland folks, had certain problems with recordkeeping and storage. But they were, in each instance, something different and not the same kind of problem that they had previously had. But when the director rendered his decision, he seemed to be saying, a recordkeeping violation is a recordkeeping violation is a recordkeeping violation. It doesn't matter if it's a different regulation within the big panoply of regulations governing explosive devices. If you missed a recordkeeping requirement one year, and four years later you missed a different recordkeeping violation, you still will be held to be willfully violating the recordkeeping standards of the agency. Now, am I reading this right? Yes. I believe that they make that argument with regard to Accounts 7 and 8 specifically, which had to do with these 12 cannon shots that were unmarked and unrecorded. With regard to Violations 5 and 6, those have to do with the failure to keep record of dozens of transactions of explosives that were occurring, particularly during a busy season. And so that failure to keep records of these daily transactions, you can go back quite far in the history of Ms. Basito's. And I should also point out there that there's no question that Ms. Basito was fully aware of her obligation to keep those records. So to the extent that we look at repeated violations, they go to the question of knowledge. And she testified that she understood those regulations. But with respect to that specific one, wasn't she also in a circumstance where the employee she had who understood how to keep those records was out having treatments for cancer? And she actually took the books to her and said, help me, while the woman was ill. And there was evidence that the ALJ relied on to say there was everything reasonable that could be done, being done at that time to address these things. Now, I just give that as background for the question I'm trying to get at, which I'm not articulating very well, which is, this may be an objective standard, but wasn't the ALJ sitting in the room in a better position to judge the evidence and say, look, look to me like given what was going on and the evidence I've taken, this was not a willful behavior. When I read the director's decision, I'm searching for what's the piece of evidence the director was looking at that was different or other than. And what I hear you saying is there isn't one. Is that right? No, I would say first that in making that determination, it's quite clear from the ALJ's recommendation that he was applying a different standard of willfulness and that the agency has applied, and that which has been applied by the other six circuits who have addressed this issue. The definition of willfulness that has been consistently applied with the exception of the ALJ's decision is knowledge of the law's requirements and plain indifference to those requirements. So which law? That's the point. When you say it was plain that the ALJ was doing something different, I'm not sure I'm following you there, because it looked to me like what the ALJ was saying is this person didn't have plain indifference to the record-keeping requirement that they were cited for subsequently because they hadn't been cited for that previously. They were cited for an entirely different record-keeping violation, which the director agrees was complete. So let's stick with the case with five and six, the record-keeping violations having to do with the daily transactions. Let's stick with seven and eight then. Okay. Which record-keeping violations were indisputably corrected immediately, and then some period of time later, years, an entirely different record-keeping violation occurred. Now, was the ALJ applying the wrong standard, or was the ALJ simply saying that those facts don't demonstrate an indifference to the record-keeping violation that was subsequently cited and the basis for the willfulness finding? Right. I think it's important, the interpretation of the ALJ's decision is an important issue here because there are some inconsistencies. We cite certain portions that appear to be applying a different standard, and then in other portions he seems to go back to the correct standard. And with regard to that issue, this Court's standard of review is just straightforward APA. Was the director arbitrary and capricious in reading the ALJ's decision in the way that he did? This is just a matter of internal deliberation. So that's just as an outset point. But going deeper into the ALJ's decision, he spoke about plain indifference, but then he applied a standard of acting in defiance of the law with no justification. That was a standard that had been advocated by the petitioner and which was accepted in the ALJ's decision. And so the director, in reading the ALJ's decision, determined that he had applied the law in a way that was not consistent with the agency's own interpretation of its regulations and statutes. The ALJ gets no deference with regard to his interpretation of those regulations and statutes, and at that point is indisputable. Once he determined that the ALJ's decision was contrary to law, that he had authority to affirm, reverse, or modify that decision. And so applying the proper standard to the evidence that had been submitted at trial, the director determined that eight of the ten counts were in fact willful. So are you, I'm sorry, are you agreeing with the assertion that your colleague has made that the first question on standard of review is that deferential piece, but if you go through that and there was an erroneous application of law by the ALJ, that the director is then free to modify, et cetera? This is a question of regulatory interpretation, and it's one that does not actually affect the outcome in this case. So the petitioner here has argued that the standard of review here is akin to that in the APA, the standard of review of the director to the ALJ. And we spent some time in our brief explaining why that's wrong, just as a matter of basic administrative law. But it's important to recognize that the outcome of this case does not turn on that question because the director here found that the ALJ's decision was contrary to law. So we would suggest that this court does not need to actually address that question. Why doesn't ATF specifically set forth its standard of review? Sometimes. I mean, in general, it seems to me there ought to be a regulation that says what is specifying what the standard of review is for the director. Yeah, I think that's a point going forward. I think that the agency is now thinking about rewriting some of its regulations. You're certainly not as specific as the GAO appeal board. Right. In the case that's cited that Vineland cites in Chen. Right. And so most of the – But doesn't the lack of a standard, as compared to other regulations, in effect give you two bites at the ass? You get to have your case tried in front of an ALJ. If you don't like it, you go back and you review it a second time. And I would say that that's within the purview of the agency to decide. We don't have an agency here that has been ordered by Congress to delegate initial fact-finding to an ALJ. We're in a situation of what do we look at? And I think that's part of what we're all struggling with here is what do we look at? Do we look beyond what the director's findings are and go back and review what the ALJ has made a determination, what the facts are and what the law is? Or are you saying that we can look at the ALJ's findings of fact, but we're bound to apply the law, which is the correct law that the director applied? Yeah, I think there are some interesting questions of administrative law raised in the margins of this case, but this case is not presenting those difficult questions. The first question for this court is whether the director's order relies on interpretations of the applicable regulations and statutes that are reasonable under Chevron deference or Seminole Rock deference, depending on whether you're talking about regulations or statutes. The second question is, I mean, the ALJ's decision is or recommendation is important as a reflection of the agency's internal deliberations. So if it was not arbitrary and capricious for the director to read that decision the way he did, then that interpretation must be affirmed. And at that point, it's clear that the director had authority to affirm, reverse, or modify the decision. So at that point, this court's only question is, is the director's order supported by substantial evidence? You're asking for some kind of deference here. And you're suggesting that my suggestion of Chevron might be where you really want it to be. Yes, Chevron with regard to the statutory regulation. You didn't argue that. Okay. Well, the issue of the letter of deference wasn't raised to the reply brief. Tell me why it is that we should accept the director's interpretation of willfulness. Well, it's been accepted by six other circuits. Not the Third Circuit. Right. They've been consistent in it. But not the Third Circuit, correct? Right, not the Third Circuit. Okay. Give us another reason. Under Chevron, it's a reasonable interpretation of the language. You didn't argue that in your brief, so give us another reason. Well, we did, just to point out that they did not raise the issue of limited deference until their reply brief, so we didn't actually get an opportunity. It wasn't up for debate at the time that we submitted our brief, so I would not. How about giving us a statutory interpretation reason? The plain language, well, I don't want to say plain language with regard to willfulness because it is a word that means different things in different contexts. So here we have the explosive context. It's within the agency's purview to their expertise goes to the issue of willfulness. We're talking about an extremely regulated industry involving a potentially dangerous commodity. And so licenses must be limited to those individuals. You have some additional time if you need it. Okay. Must be limited to those individuals who are sufficiently diligent and competent to comply with all of the regulations all the time. So to the extent that there's a standard of willfulness here that appears to be overly stringent, I would say that that's entirely appropriate in the context of federal explosives law. Okay. And so just to move forward to the facts, I think it's important because the petitioner here spends a good portion of their brief characterizing the various violations of federal explosives law as minimal or hyper-technical. It's important to note just how serious these violations are from the perspective of ATF. This isn't just the petitioner characterizing. I mean, we've got a 60-plus page opinion from the ALJ characterizing the facts, the facts that the ALJ found. Applying the inappropriate standard of willfulness. Whether it's a correct or incorrect standard of willfulness, I've heard you say, and I read it in your briefs, that the director doesn't dispute the factual findings of the ALJ, right? Right. And so the case law across the board stands for the proposition that when you have repeated violations in conjunction with knowledge of the law's requirement, that is sufficient to demonstrate evidence. Repeated violations of what? That's the question. Right. So I can point to specific, Count 1, for instance, has to do with the storage of explosives in an unapproved trailer. This is the third time that Vineland had been cited for storing explosives in an unapproved trailer. Violations 5 and 6 have to do with the failure to keep daily records regarding the transactions of explosives. Ms. Pacito testified that she was fully aware of those regulations and of her record-keeping requirements. Her explanation was, as you mentioned earlier, that her secretary was ill, and so instead of hiring additional staff, instead of cutting down on her business, instead of talking to ATF about the problem, she chose to not comply with her record-keeping obligations. Did she choose not to comply, or was it within the ALJ's purview as a fact-finder to make the assessment that there was every good faith effort to comply? I mean, you're arguing that you're making now factual assertions that are contrary to the factual finding of the ALJ. The factual finding of the ALJ was good faith effort to comply. Your assertion is deliberate decision not to comply. How do we address that? Well, that goes to the actual issue of willfulness, but both the ALJ and the Director agreed that Ms. Pacito understood her obligations and that her explanation for failing to comply with those obligations was that her secretary was ill and she could not both run the company and keep up with her obligations at the same time. Applying the wrong standard of willfulness defined to the law with no justification, the ALJ determined that that excuse was sufficient to negate willfulness. The Director, applying the appropriate standard of willfulness, determined that that excuse did not negate willfulness in this case. And, in fact, it's the epitome of a decision that demonstrates plain indifference. And under a situation like this where there's a long history of noncompliance with the regulations, ATF's authority to revoke a license must be affirmed. This is squarely within the agency's expertise and authority. It's a matter of public safety. If we would decide that the Director acted properly with reference to some of these violations but not others. Yes, thank you. Is the bottom line that we remand for consideration? No, that's a very important point. The Director found eight counts of willful noncompliance with federal explosive law, any one of which would have been sufficient to require the revocation of violence licenses. Require the revocation? Under the statute, a license may not be issued to a license application in a case of willfulness, yes. Maybe the Director would exercise some discretion in deciding not to revoke the license if only some of these violations occurred. No, I think the Director's order is quite clear that any one of the violations would be sufficient. Is there a stay in this case or has the license been suspended? Yes, this Court granted a stay about this time last year. Yes, we did. Yes, okay. Is there no further questions? Then we ask that the Court affirm the ATF's. If you have a minute, there's another question I did have that was not addressed in the briefs. When I looked at the statute, it talked about willfully with reference to the issuance of a license, but not with reference to revocation. Yes, it's interesting. The ATF has interpreted the willful requirement as applying to both the issuance of a license and also revocation. They've done that consistently? Yes. Okay. Thank you. Thank you, Ms. Cochran. Mr. Foster? Thank you very briefly. It's the last speaker this afternoon. I understand my mandate to be brief. With regard to the last comment, the Director really didn't find eight violations. He found that three of them were not willful, so we're really only dealing with five, but that's a distinction without a real difference because I would agree with the last comment. Any one is sufficient. Exactly. However, turning to the issue of willfulness, this is not an issue of regulatory interpretation. We don't get into Chevron. We don't get into Skidmore. Incidentally, this Court has said there's practically no deference at all in the Evert case that we've cited in our brief. Let me read to you from the Director's opinion at page 11. Willfulness is not defined in the federal explosive laws and regulations, but has been defined by case law in both the firearms and explosive context to mean plain indifference to or intentional disregard of a known duty. That is what the case law has defined willfulness to be, not the ATF, not in its regulations, and they cite in support of that proposition CRSM Inc. v. Herbert. Now, what does the Herbert case, which is the Fourth Circuit case decided just a couple of years ago, which I've suggested to the Court, is a pretty good definition of the standard of willfulness to apply and which is the standard which the ALJ did, in fact, apply in this case. This whole argument about the ALJ applying the improper standard of willfulness and therefore that's being some springboard to the Director's right to completely disregard the ALJ's findings, is a complete red herring. It's a straw man argument. But what did Herbert say about willfulness? And remember, Herbert was in the context where there had been four inspections over a five-year period, each one of which found hundreds of firearms record-keeping violations year over year over year. Actually increasing in magnitude after two or three sit-downs with the ATF where they said, look, if you keep this up, we're going to shut you down. So, says Herbert, to be sure a single or even a few inadvertent errors in failing to act may not amount to, quote, willful failures even when the legal requirement to complete the forms was known. Yet, at some point, and the emphasis is in the original, at some point when such errors continue or even increase in the face of repeated warnings given by enforcement officials, accompanied by explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements. And who gets to make that call, the at some point? Is the director empowered independently of whatever the ALJ says to say, I'm looking at the same record you are, and I say, it's this point. The ALJ, you may have drawn the line a different spot, but I as the director exercise authority and say, for me, that point is here, and therefore I'm making, I'm drawing the inference of willfulness. And under the director's scope of review, if there is reasonable warrant in fact or substantial evidence to support the ALJ's conclusion that that point had not yet been reached, then that is determinative on the factual issue of willfulness because it is peculiarly an issue that is to do with the state of mind of the licensee. So the answer to my question is the director doesn't have that independent authority. The director has to accept where the ALJ drew the line. Is that right? That is correct, yes. On this factual issue of willfulness. Thank you, Mr. Foster. Thank you. Thank you for the court's time and attention. We thank counsel for excellent arguments, and we will take the matter under advisement. Thank you very much. Thank you.